**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 21 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; et al., | No. 20-16068 |
| Plaintiffs-Appellees, | D.C. No. 3:16-cv-00236-WHO |
| v. | MEMORANDUM* |
| TROY NEWMAN, | |
| Defendant-Appellant, | |
| and | |
| CENTER FOR MEDICAL PROGRESS; et al., | |
| Defendants, | |
| NATIONAL ABORTION FEDERATION, | |
| Intervenor. | |

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; et al., | No. 20-16070 |
| Plaintiffs-Appellees, | D.C. No. 3:16-cv-00236-WHO |
| v. | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

CENTER FOR MEDICAL PROGRESS; et al.,

                Defendants-Appellants,

 and

TROY NEWMAN; et al.,

                Defendants,

_____

NATIONAL ABORTION FEDERATION,

                Intervenor.

---

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; et al.,

                Plaintiffs-Appellees,

 v.

ALBIN RHOMBERG,

                Defendant-Appellant,

 and

CENTER FOR MEDICAL PROGRESS; et al.,

                Defendants,

_____

NATIONAL ABORTION FEDERATION,

No.    20-16773

D.C. No. 3:16-cv-00236-WHO

Intervenor.

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC.; et al.,

No.    20-16820

D.C. No. 3:16-cv-00236-WHO

Plaintiffs-Appellees,

v.

SANDRA SUSAN MERRITT, AKA Susan
Tennenbaum,

Defendant-Appellant,

and

CENTER FOR MEDICAL PROGRESS; et
al.,

Defendants,

_____

NATIONAL ABORTION FEDERATION,

Intervenor.

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted April 21, 2022
San Francisco, California

Before:  MURGUIA, Chief Judge, GOULD, Circuit Judge, and

FREUDENTHAL,** District Judge.

Defendant-Appellants ("Appellants") appeal (1) rulings and findings on the breach of contract claims; (2) the grant of summary judgment on several trespass claims; (3) several rulings regarding the RICO claim; (4) the approval of adverse inferences; (5) rulings on numerous jury instructions; (6) rulings on several discovery and evidentiary issues; (7) rulings regarding the recorded individuals' reasonable expectations of privacy; (8) the award of compensatory damages; (9) the grant of injunctive relief; (10) the sufficiency of the evidence supporting the judgment against Adrian Lopez, Troy Newman, and Albin Rhomberg; and (11) the failure of the district court to recuse himself or be disqualified.[1]  As the parties are familiar with the facts, we do not recount them here.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[2]

We review the grant and denial of summary judgment *de novo*.  *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017).  We view

---

** The Honorable Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation.

[1] In a separate opinion, filed simultaneously with this memorandum disposition, we discuss the facts of this case and Appellants' First Amendment and Federal Wiretap Act grounds of appeal.

[2] Any purported basis of appeal not explicitly addressed in this memorandum disposition or the simultaneously filed opinion is waived either because it was not properly raised or because reaching the issue is unnecessary to the panel's decision.  *See, e.g.*, *Badgley v. United States*, 957 F.3d 969, 978–79 (9th Cir. 2020); *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012).

the evidence in the light most favorable to the non-moving party and may affirm

on any ground supported by the record. *Campidoglio LLC v. Wells Fargo & Co.*,

870 F.3d 963, 973 (9th Cir. 2017).

"A jury's verdict must be upheld if it is supported by substantial evidence,

which is evidence adequate to support the jury's conclusion, even if it is also

possible to draw a contrary conclusion." *Unicolors, Inc. v. Urb. Outfitters, Inc.*,

853 F.3d 980, 984 (9th Cir. 2017) (citation omitted).

"We review de novo a judgment as a matter of law." *Spencer v. Peters*, 857

F.3d 789, 797 (9th Cir. 2017). Judgment as a matter of law is appropriate when the

evidence permits only one reasonable conclusion. *Torres v. City of Los Angeles*,

548 F.3d 1197, 1205–06 (9th Cir. 2008) (citation omitted).

**1.** The district court did not err in determining that the public policy

exception did not excuse Appellants' contractual breach. The videos did not

contain evidence of wrongdoing. Further, Appellants do not show that "the

interest in . . . enforcement is clearly outweighed in the circumstances by a public

policy against the enforcement of such terms." Restatement (Second) of Contracts

§ 178(1) (1981). There is a strong public interest in the enforcement of contracts

entered willingly. Given Appellants' elaborate and long-term deception, Plaintiffs-

Appellees ("Planned Parenthood") were reasonably justified in expecting that the

contracts and their terms would be honored. Appellants' reliance on the public

policy exception is also undercut by their misconduct, *see infra*, and their publication of significant amounts of video that is not related to any alleged crime or wrongdoing, *see Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011).

The district court did not err in determining that Planned Parenthood Federation of America ("PPFA") is a third-party beneficiary of the National Abortion Federation ("NAF") Agreements. PPFA benefitted from the NAF Agreements because the agreements protected confidential information disclosed at NAF conferences attended by PPFA members. *See Goonewardene v. ADP, LLC*, 434 P.3d 124, 126–27 (Cal. 2019). PPFA is also a NAF member, and the NAF Agreements state that NAF conference information is provided to help NAF members; PPFA thus benefited from receiving confidential information at the NAF conferences, and giving benefits to PPFA and others was a motivating purpose of the NAF Agreements. *See id*.

Substantial evidence supported the jury's verdict that Appellants violated the Planned Parenthood Gulf Coast ("PPGC") non-disclosure agreement ("NDA"). There is sufficient evidence to show that Appellants should have reasonably understood that the conversations at the PPGC clinic were confidential, including: the recorded conversations that took place in areas with access limited to staff using secure keycards; Daleiden and Merritt entered these secured locations only

after signing an NDA, presenting (fake) identification, going through a metal detector, and seeing PPGC staff use a keycard to enter; and Planned Parenthood's staff testified that they generally understood such conversations to be confidential.

The NAF NDAs were supported by consideration. The NAF exhibitor agreements and NDAs are best read as a single contract because they were "executed as parts of substantially one transaction" covering the entrance to and conduct during the NAF conferences. *See Meier v. Paul X. Smith Corp.*, 205 Cal. App. 2d 207, 217 (Cal. Ct. App. 1962). NAF gave consideration for the NDAs. The exhibitor agreements allowed NAF to reject an exhibitor for any reason in its sole discretion, and NAF's decision to admit Appellants, constituted consideration.[3]

**2.** The district court did not err in granting Planned Parenthood's motion for summary judgment as to claims that various Appellants trespassed in several

---

[3] The jury found that Daleiden, BioMax, and CMP breached the obligations clause of the exhibitor agreements. We will not now review the district court's denial of Appellants' motion for summary judgment on this issue. *Williams v. Gaye*, 895 F.3d 1106, 1122 (9th Cir. 2018). Likewise, we need not reach the issue whether the district court erred in granting Planned Parenthood summary judgment regarding the breach of the educational and products clauses of the exhibitor agreements.

Appellants waived their argument that the Exhibitor Agreements became moot by failing to adequately brief the issue. *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010). Even if we were to reach the merits of Appellants' argument, we would affirm the district court because the exhibitor agreements did not state that eviction was the sole remedy for a breach and Planned Parenthood could seek other lawful remedies.

clinics and conferences.  Appellants exceeded the scope of their consent to enter the Planned Parenthood conferences and facilities and NAF conferences by surreptitiously recording Planned Parenthood staff in violation of  contractual promises Appellants made to Planned Parenthood—including promises to maintain confidentiality and to comply with fraud and privacy laws.  *See Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971); *see also supra* Part 1.

**3.**  There was no error in the district court's rulings on the RICO claim. Planned Parenthood's RICO claim satisfied the minimal interstate commerce nexus requirement under 18 U.S.C. § 1028(c)(3)(A).  *See, e.g., United States v. Gutierrez*, 963 F.3d 320, 339 n.7 (4th Cir. 2020); *United States v. Klopf*, 423 F.3d 1228, 1239 (11th Cir. 2005).  The production and transfer of the fake driver's licenses affected interstate commerce because Appellants used the fake licenses to gain admission to out-of-state conferences and facilities, and then presented those licenses at the out-of-state conferences and facilities, which were operating in interstate commerce.  *See United States v. Turchin*, 21 F.4th 1192, 1202–03 (9th Cir. 2022).  And further, Daleiden's use of the internet to search for and arrange the purchase of two fake driver's licenses was "intimately related to interstate commerce."  *See United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007).

The district court did not err in denying Appellants' renewed motion for judgment as a matter of law regarding the required *pattern* of predicate acts

8

necessary to violate RICO. A pattern may be established by proof that defendants' conduct possessed "open-ended continuity," *i.e.*, that their conduct "by its nature project[ed] into the future with a *threat* of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (emphasis added). "As long as a threat of continuing activity exists at some point during the racketeering activity, the continuity requirement is satisfied." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 194 n.5 (9th Cir. 1987). The evidence showed that various Appellants had previously advocated for or used undercover sting operations targeting Planned Parenthood, and CMP and BioMax were still extant and intended to carry out future projects. The district court did not err in determining that "there was sufficient evidence on which a reasonable jury could rely to establish open-ended continuity."

The district court did not err in denying Appellants' post-trial motion for judgment as a matter of law on RICO proximate cause. There was a direct relationship between Appellants' production and transfer of the fake driver's licenses and the alleged harm. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010); *see also Harmoni Intl. Spice, Inc. v. Hume*, 914 F.3d 648, 651–52 (9th Cir. 2019). The district court permitted only infiltration damages and security damages, limiting any difficulty in determining what damages were attributable to Appellants' RICO violation; there is no risk of Planned Parenthood

recovering duplicative damages; holding Appellants liable discourages illegal behavior; and there are no more directly injured victims. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1249–52 (9th Cir. 2019); *Harmoni*, 914 F.3d at 652.

**4.** We "review for abuse of discretion a district court's decision to draw an adverse inference from a party's invocation in a civil case of the Fifth Amendment privilege against self-incrimination." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 909 (9th Cir. 2008). Courts may draw adverse inferences in civil cases from a party's invocation of the Fifth Amendment right not to testify. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

Here, the district court did not abuse its discretion in approving the adverse inferences according to the standard set forth in *Glanzer*. *Id.* at 1265. There was no less burdensome way for Planned Parenthood to present evidence about the topics covered by the adverse inferences: no alternative testimony or documents were available to show the state of mind or beliefs of those who had refused to testify, Appellants themselves objected to the admission of evidence that supported some adverse inferences, and the stipulations to which Appellants agreed were misleading and incomplete. *See Glanzer*, 232 F.3d at 1265. There was also a substantial need for the adverse inferences: in particular, many of the adverse inferences regarding Newman related to his knowledge, intent, and motive, crucial

components of Planned Parenthood's causes of action.  *See id.*  Further, evidence in the record supports all of the adverse inferences that Appellants allege lacked a factual foundation.

The adverse inferences were also reasonable, and neither their number nor use was unduly prejudicial.  The adverse inferences accompanied a complex, six-week trial with dozens of witnesses and numerous exhibits.  The district court gave the jury proper limiting instructions, telling the jury that they were permitted, but not required, to draw the adverse inferences, and instructed the jury that they "may not consider" the adverse inferences as to Planned Parenthood's California claims.  The district court also did not abuse its discretion in admitting Newman Adverse Inference 1.  The district court balanced the interests of the parties in admitting this adverse inference because Newman himself objected to the admission of the book upon which this adverse inference was based.

The district court did not err in permitting adverse inferences based on two non-parties invocations of the privilege against self-incrimination.[4]  The non-party

---

[4] Appellants argue that adverse inferences against non-parties should not be permitted, but do not explain why.  Other circuits have upheld such inferences. *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 122–124 (2d Cir. 1997); *F.D.I.C. v. Fid. & Deposit Co.*, 45 F.3d 969, 977–78 (5th Cir. 1995); *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275–81 (3d Cir. 1986); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984). Appellants have not pointed to any circuits which do not permit adverse inferences about nonparties, much less provided any reason this court should not permit them.

adverse inferences were relevant to Planned Parenthood's claims, the adverse inferences could not have been obtained from other sources, the district court evaluated proper criteria when permitting the admission of these adverse inferences, and the district court gave a limiting instruction to the jury. There was no abuse of discretion.

Finally, even assuming *arguendo* that the district court erred in drawing some or all of the adverse inferences, any error was harmless. *See Richards*, 541 F.3d at 915. The jury saw significant evidence and could evaluate the demeanor of those witnesses who did testify, and none of the adverse inferences were so prejudicial as to taint the verdict.

**5.** We review the district court's formulation of civil jury instructions, including its denial of a proposed jury instruction, for abuse of discretion. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc); *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). We review whether an instruction stated the law correctly *de novo*. *Peralta*, 744 F.3d at 1082. "We do not reverse the judgment if the alleged error in the jury instructions is harmless." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1087 (9th Cir. 2005) (citation omitted). When a party fails to preserve an objection to a jury instruction, we review for plain error. *Skidmore as Tr. for Randy Craig Wolfe Tr. V. Led Zeppelin*, 952 F.3d 1051, 1072 (9th Cir. 2020) (en banc). "Jury instructions must be supported by the evidence, fairly and

adequately cover the issues presented, correctly state the law, and not be misleading." *Peralta*, 744 F.3d at 1082.

The district court did not abuse its discretion in instructing the jury and, assuming *arguendo* that the district court erred, any error was harmless. First, the district court did not err in failing to give the First Amendment instructions that Appellants requested. The proposed instruction that the jury should assume the truth of the videos' content was unnecessary because Planned Parenthood stipulated that the participants spoke the words recorded in the videos. The instruction regarding publication damages was unnecessary because the jury was only permitted to award narrow categories of damages. Furthermore, when evaluated as a whole, any potential omission was harmless because the jury was instructed to consider only two narrow categories of damages "directly caused" by Appellants.

Second, the district court did not err in instructing the jury regarding Appellants' breach of the NAF Agreements. Appellants did not object to this instruction, and we review for plain error. *Skidmore*, 952 F.3d at 1072. The district court determined only after providing its instruction that Appellants breached the NAF Agreements by disclosing confidential information. However, Appellants have not shown that this error "affected substantial rights," *id.* at 1073,

because Appellants admitted in their answer that Daleiden disclosed information learned at NAF meetings to third parties without NAF's consent.

Third, the district court did not abuse its discretion when instructing the jury regarding California Penal Code § 632. The instruction required that the jury find that an Appellant "intentionally recorded" and that the recorded individual "had a reasonable expectation" of privacy. The instruction closely followed the 2022 California Civil Pattern Jury Instructions, and any potential difference between the instructions and the language in *People v. Superior Ct. of Los Angeles Cnty.*, 449 P.2d 230, 237 (Cal. 1969) is irrelevant and harmless.

Fourth, the district court did not err in instructing the jury on punitive damages. Because Appellants did not object to the district court's omission of the punitive damages instruction Appellants originally requested, we review for plain error. *Skidmore*, 952 F.3d at 1072. The district court did not plainly err in omitting Appellants' requested instruction prohibiting third-party damages because the instructions on punitive damages as a whole did not permit such an award.

Fifth, there was no error in the recording instructions. Neither 18 U.S.C. § 2510(2) nor Florida Statute § 934.02(2) require a separate expectation of privacy above the objective reasonableness of the recorded individual's subjective belief. *See Price v. Turner*, 260 F.3d 1144, 1148–49 (9th Cir. 2001); *Huff v. Spaw*, 794 F.3d 543, 549 & n.4 (6th Cir. 2015); *State v. Inciarrano*, 473 So. 2d 1272, 1274

14

(Fla. 1985). All the recorded individuals exhibited reasonable expectations of privacy; they conversed in private areas that were protected by keycard access or limited to badge-carrying conference attendees, and the conversations took place behind closed doors or in areas where no one could reasonably be expected to surreptitiously eavesdrop. *See infra* Part 7. The instruction regarding corporate standing under the recording statutes also accurately conveyed the law. *See Smoot v. United Transp. Union*, 246 F.3d 633, 639–40 (6th Cir. 2001). And many of the recordings contained information concerning Planned Parenthood's business matters, so any potential error in the corporate standing instruction was harmless. *Altera Corp.*, 424 F.3d at 1087.[5]

**6.** We review a district court's rulings on discovery for abuse of discretion. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1070 (9th Cir. 2016). "A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citation omitted). "We review evidentiary rulings for abuse of discretion and reverse if the exercise

---

[5] Appellants' cursory argument that Planned Parenthood Northern California ("PPNorCal") lacked standing to bring its recording claim fails because there was sufficient evidence in the record to show that Dr. Drummond-Hay was recorded discussing PPNorCal's internal matters.

of discretion is both erroneous and prejudicial." *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). Prejudice occurs when the district court's error "more probably than not" tainted the verdict. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

First, the district court did not err in prohibiting discovery into, and evidence at trial showing, Appellants' purported credibility and good intent and positive results from Appellants' actions. These issues were irrelevant to the claims at issue; journalists have no special license to break laws of general applicability, s*ee, e.g.*, *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1190 (9th Cir. 2018); and there was no evidence in the record that Planned Parenthood broke any laws or that any charges have been filed against Planned Parenthood by the Department of Justice.

Second, the district court did not abuse its discretion in refusing to admit Appellants' California Penal Code § 633.5 affirmative defense evidence.[6] Any evidence that Appellants gained after they had already started their surreptitious recordings had no bearing on why they initially decided to record. Appellants only engaged Dr. Smith after they began releasing the videos, so this evidence could not

---

[6] *De novo* review is only available when a defendant was completely prevented from presenting a defense, which was not the case here. *See Branch Banking*, 871 F.3d at 759–60; *United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010). Even if we reviewed *de novo*, we would reach the same conclusion.

have influenced their intent to make any of the recordings. The district court admitted evidence related to the Dr. Nucatola meeting. Moreover, even if the excluded evidence had been admitted, it was unlikely to have changed the jury's verdict. *See Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir. 2001).

Third, even assuming *arguendo* that *de novo* review applies, the district court did not err in admitting evidence showing historical violence against abortion providers. This evidence was probative of important issues, including why the conferences had high security, why Planned Parenthood incurred certain expenses to restore security, and why individuals at the conferences had reasonable expectations of privacy. The danger of unfair prejudice did not substantially outweigh the probative value of this evidence.[7] *See* Fed. R. Evid. 403.

**7.** The district court did not err in denying Appellants' post-trial motion for judgment as a matter of law regarding the recorded individuals' reasonable expectations of privacy at various conferences and meetings. "[W]hether a

---

[7] Appellants waived their objection to the admission of the NAF report on historical anti-abortion violence by failing to sufficiently raise this issue in their opening briefing. *See Badgley*, 957 F.3d at 978–79. Even if not waived, Appellants failed to show that the district court abused its discretion in admitting the report as a business record because they did not point to any inaccuracies in the report or otherwise demonstrate that the report was unreliable. *See N.L.R.B. v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir. 1981).

communication is confidential is a question of fact normally left to the fact finder." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017).[8]

Substantial evidence supports the jury's determination that the recorded individuals had objectively and subjectively reasonable expectations of privacy. Dr. Nucatola met Appellants at a private conference, and she understood attendees to have been carefully vetted; Appellants carried out an elaborate ruse to portray themselves as representatives of a fake tissue procurement company; Dr. Nuctatola's conversation with Appellants occurred in a booth in the back of a restaurant when the restaurant was busy; Dr. Nucatola testified that she could not hear conversations at other tables and believed that their conversation was private; and the jury saw multiple videos of the restaurant meeting and could judge for themselves whether Dr. Nucatola had a reasonable expectation of privacy. Similarly, Dr. Gatter was introduced to Appellants by a trusted colleague; Appellants carried out an elaborate ruse to portray themselves as representatives of a fake tissue procurement company; Appellants met Dr. Gatter and Laura Felczer in an empty restaurant; and the jury saw video of the meeting and could judge for themselves whether Dr. Gatter and Felczer had a reasonable expectation of privacy.

---

[8] Our review is not *de novo* because the issues here are primarily factual. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

Substantial evidence also supports the jury's finding that the individuals recorded at the conferences had objectively and subjectively reasonable expectations of privacy. The conference organizers took extensive measures to protect the security of the conferences including reserving private hotel spaces; restricting access to the conferences; hiring security to monitor entrances; requiring attendees to pre-register; requiring attendees to show photo ID at check-in; requiring attendees to sign confidentiality agreements; and requiring attendees to wear badges at the conferences. The conversations generally occurred in crowded areas with lots of background noise. Many who attended the conferences testified that they believed the conferences and their conversations were private.

**8.** The district court did not err in denying Appellants' post-trial motion for judgment as a matter of law on the infiltration and security damages on grounds that the damages were proximately caused by Appellants' underlying torts. A defendant proximately causes damages when there is a "sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury" such that the alleged injury "was a foreseeable and natural consequence" of the defendant's scheme. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657–58 (2008).

The infiltration damages covered expenses such as assessing security systems, vetting practices review, hiring security guards for meetings, and

installing conference badging systems. The jury could have concluded that Planned Parenthood incurred these costs to prevent further infiltrations by the Appellants and their co-conspirators as a direct result of Appellants' wrongful trespass, recording, and breach of contract actions. The security damages provided physical security and online threat monitoring for individuals recorded in the videos Defendants released. Given the history of violence against abortion providers, it was a foreseeable and natural consequence of Appellants' actions that the recorded individuals would be subject to threats and reasonably fear for their safety. *See Bridge*, 553 U.S. at 657–58.

**9.** We review an award of punitive damages for abuse of discretion, and "a challenge to the sufficiency of the evidence to support a punitive damage award must be rejected if the award is supported by substantial evidence." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906–07 (9th Cir. 2002). In general, a general jury verdict will be upheld only if there is substantial evidence to support each theory of liability submitted to the jury. *Webb v. Sloan*, 330 F.3d 1158, 1166 (9th Cir. 2003). However, a reviewing court has the discretion to construe a general verdict as attributable to any theory if it is supported by substantial evidence and was submitted to the jury free of error. *Traver v. Meshriy*, 627 F.2d 934, 938–39 (9th Cir. 1980); *see Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1439 (9th Cir. 1996).

There was no error in the award of punitive damages. Though we reverse the jury's verdict on the Federal Wiretap Act claim, there was substantial evidence to support the other theories of liability. There was substantial evidence that Appellants committed fraud, trespassed, and violated state wiretapping laws, and that they engaged in that conduct through "fraud" or "intentional misconduct." There was indeed overwhelming evidence to support the punitive damages award based on the fraud and findings that Daleiden, Merritt, Rhomberg, Newman, CMP, and BioMax committed fraud or conspired to commit fraud through intentional misrepresentation.[9] That evidence included: (1) that Daleiden and Merritt intentionally recorded individuals without their consent at conferences and meetings; (2) that Daleiden and Merritt intentionally misrepresented their identities, the intent of their participation, and their work affiliations to attend conferences, lunches, and meetings; (3) that Newman was aware of and agreed to the fraudulent tactics; (4) that Rhomberg knew the project would involve secret recordings and advised on what should be recorded; and (5) that Daleiden, Rhomberg, and Newman formed CMP and BioMax to infiltrate conferences attended by Planned Parenthood staff and obtain "gotcha" videos made with

---

[9] Appellants waived any challenge to their liability for fraud by failing to properly raise the issue in their opening briefs. *See Isabel v. Reagan*, 987 F.3d 1220, 1226 n.7 (9th Cir. 2021); *Badgley*, 957 F.3d at 978–79. Even if the argument were not waived, Appellants' challenge would be meritless and would not shield them from liability.

hidden recording equipment. *See* 18 U.S.C. § 2520(b)(2); Fla. Stat. § 768.72; *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 650 (Md. 1992). Given the overwhelming and largely undisputed evidence of intentional fraud by the Defendant-Appellant agents of CMP and BioMax, there was no error on the punitive damages award.

**10.** "We review the district court's decision to grant a permanent injunction for abuse of discretion." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 965 (9th Cir. 2017). "Although questions of standing are reviewed de novo, we will affirm a district court's ruling on standing when the court has determined that the alleged threatened injury is sufficiently likely to occur, unless that determination is clearly erroneous or incorrect as a matter of law." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

The district court did not clearly err in determining that Planned Parenthood had standing to seek injunctive relief. Following a six-week jury trial, the district court determined, among other things, that: Appellants used fake driver's licenses and secretly recorded individuals associated with Planned Parenthood; Daleiden, Merritt, Baxter, and Lopez secretly recorded everyone with whom they spoke to at various conferences, lunches, and clinics; Daleiden, Newman, and Rhomberg sought to end legal abortion in America; Merritt and Daleiden had previously engaged in undercover work targeting Planned Parenthood; all individual

Appellants were involved with CMP, which is still operational and has the aim of ending legal abortion; and each individual Appellant has the ability to continue to conduct similar work. None of these factual findings were clearly erroneous, *see Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008), and the district court did not err in determining that Planned Parenthood had standing to seek injunctive relief because it was likely to be injured again in a similar way, *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

The district court did not abuse its discretion in determining that the injunction was in the public interest. The district court found that Appellants' actions substantially disrupted Planned Parenthood's legal provision of healthcare to patients. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) ("The public interest mostly concerns the injunction's impact on nonparties rather than parties.") (internal quotations omitted). There was no evidence in the record that Planned Parenthood broke the law or that any charges had been filed against Planned Parenthood by the Department of Justice.

Nor did the district court abuse its discretion in determining that many of Planned Parenthood's injuries could not be addressed by damages. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Damages alone could not prevent Appellants from committing further illegal actions targeting Planned Parenthood such as trespass, unconsented recordings, and breach of contracts.

Finally, the district court did not abuse its discretion in issuing a permanent injunction against all Appellants except Lopez. The district court observed Merritt during the six-week trial and heard significant evidence about her long-time pro-life activism, including her role in Appellants' scheme and a previous undercover activity targeting Planned Parenthood.[10]

**11.** Substantial evidence supports the judgment against Lopez. Lopez knew Daleiden's true identity but referred to Daleiden by his fake name, Sarkis, when attending Planned Parenthood's conferences; Lopez posed as a BioMax technician, which he was not; and Lopez secretly recorded at the conferences he attended without the consent of those he recorded.[11]

Substantial evidence also supports the judgment against Rhomberg. Rhomberg was the CFO of CMP and participated in numerous CMP board meetings for several years; Rhomberg assisted in CMP's fundraising; Rhomberg received a "project proposal" from Daleiden outlining a plan to buy "Undercover Equipment" to expose fetal trafficking using "'gotcha' undercover videos" from

---

[10] The only Appellant who sufficiently raised a challenge to the injunction regarding him or herself is Merritt; all other Appellants waived such a challenge. *See Badgley*, 957 F.3d at 978–79.

[11] Appellants cursorily argue that Lopez is subject to the agent immunity rule. This argument is unpersuasive because Lopez himself had a duty to not defraud Planned Parenthood. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 512 (Cal. 1994); *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Apr. 7, 2000).

annual abortion-provider conferences that Appellants later attended and where they secretly recorded attendees; the jury heard Rhomberg admit at his deposition, in contradiction to his trial testimony, that Daleiden told him he intended to go undercover to infiltrate abortion-provider conferences; and the jury saw a video in which Daleiden called Rhomberg from one of Planned Parenthood's clinics using the fake name "Sarkis."

Substantial evidence supports the judgment against Newman. Newman was the Secretary of CMP; after publication of the videos, Newman wrote that "I just wanted to underscore that it was my project for the past three years" and "originated from our office alone,"; in a book he wrote, Newman described an elaborate hoax scenario to send a team with a hidden video camera into clinics providing abortions; Daleiden testified that Newman appreciated the undercover methodology of the project; Rhomberg testified that Newman participated in CMP board meetings every few months for several years; the adverse inferences approved by the district court stated that Newman had an "integral role in CMP and the Human Capital Project since its origin in 2013," "understood that one of CMP's goals was to end abortion, and to defund and shut down Planned Parenthood," knew that other Appellants used fake names to infiltrate Planned Parenthood's conferences, and knew BioMax was a front organization that surreptitiously recorded Planned Parenthood's staff without their consent; and the

day after the first video was released, Newman wrote that "this has exceeded our expectations. We are off to a great start."

We are not convinced by Newman's argument that it was "fundamentally unfair" for the district court to include him on the trespass and recording claims even though the complaint did not allege that he committed these offenses. This argument was waived due to insufficient briefing, *see Badgley*, 957 F.3d at 978–79, and Newman did not allege any prejudice from this omission. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

Planned Parenthood did not need to prove that Newman could only be liable in his personal capacity if an ordinarily prudent person knowing what he knew at the time would not have acted similarly. The district court correctly noted that tacit consent and knowledge of unlawful purpose are enough to prove a director's personal liability, and corporate officers can be personally liable "for violating their own duties towards persons injured by the corporation's tort." *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Apr. 7, 2000). Even if the district court had applied Newman's preferred test, Newman cannot show prejudice: there is substantial evidence that Newman authorized or knew about the tortious conduct and an "ordinarily prudent person, knowing what [Newman] knew at that time, would not have acted similarly

under the circumstances." *See Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 508–09 (Cal. 1986).

Newman's argument that a person who is not a party to a contract cannot be guilty of conspiracy to break that contract is unavailing. Newman relies on *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (Cal. 1973), which is limited to "the tort of breach of duty of good faith and fair dealing" and is inapplicable here. *See Younan v. Equifax Inc.*, 169 Cal. Rptr. 478, 485 (Cal. Ct. App. 1980).

**12.** "Rulings on motions for recusal are reviewed under the abuse-of-discretion standard." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012). The standard is "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* (quoting *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir. 1997) (per curiam)).

Judge Orrick did not abuse his discretion in refusing to disqualify himself, and Judge Donato did not abuse his discretion in determining that Judge Orrick need not recuse himself. A reasonable person would not ascribe the views of a judge's spouse to the judge him or herself simply because the spouse's profile picture included the judge. *See Perry v. Schwarzenegger*, 630 F.3d 909, 911–12 (9th Cir. 2011). Nor would a reasonable person have questioned the impartiality of Judge Orrick given his former role at the Good Samaritan Family Resource Center.

**AFFIRMED.**