**Consolidated Appeal Nos. 20-16068, 20-16070, 20-16773, 20-16820**

**Decision: October 21, 2022; Panel: Hon. Murguia, Gould, and Freudenthal**

# In the
# United States Court of Appeals
# for the Ninth Circuit

| | |
|---|---|
| PLANNED PARENTHOOD FED. OF AM., et al.,<br>*Plaintiffs-Appellees,*<br><br>v.<br><br>TROY NEWMAN,<br>*Defendant-Appellant.*<br>_____/ | No. 20-16068<br><br>*Appeal from the U.S. District Court<br>for the N.D. of California<br>Case No. 3:16-cv-236-WHO<br>Hon. William H. Orrick, Presiding* |
| PLANNED PARENTHOOD FED. OF AM., et al.,<br>*Plaintiffs-Appellees,*<br><br>v.<br><br>THE CTR. FOR MED. PROGRESS, et al.,<br>*Defendants-Appellants.*<br>_____/ | No. 20-16070<br><br>*Appeal from the U.S. District Court<br>for the N.D. of California<br>Case No. 3:16-cv-236-WHO<br>Hon. William H. Orrick, Presiding* |
| PLANNED PARENTHOOD FED. OF AM., et al.,<br>*Plaintiffs-Appellees,*<br><br>v.<br><br>ALBIN RHOMBERG,<br>*Defendant-Appellant.*<br>_____/ | No. 20-16773<br><br>*Appeal from the U.S. District Court<br>for the N.D. of California<br>Case No. 3:16-cv-236-WHO<br>Hon. William H. Orrick, Presiding* |
| PLANNED PARENTHOOD FED. OF AM., et al.,<br>*Plaintiffs-Appellees,*<br><br>v.<br><br>SANDRA SUSAN MERRITT,<br>*Defendant-Appellant.*<br>_____/ | No. 20-16820<br><br>*Appeal from the U.S. District Court<br>for the N.D. of California<br>Case No. 3:16-cv-236-WHO<br>Hon. William H. Orrick, Presiding* |

**APPELLANTS' MOTION TO STAY ISSUANCE OF
THE MANDATE AND TO MODIFY DECISIONS IN LIGHT
OF CHANGE IN LAW; OR, TO PROVIDE ALTERNATIVE RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

PROCEDURAL HISTORY ................................................................ 2

LEGAL STANDARD ......................................................................... 3

ARGUMENT ...................................................................................... 5

I.    THIS COURT'S DECISION IN *PROJECT VERITAS* RENDERS
      THE RECORDING STATUTES UNCONSTITUTIONAL ........................ 5

      A.   Recordings Of Public Interest Are Protected Speech. ................................. 7

      B.   When A Statute Permits Certain Types Of Recording Content While
      Banning Others, The Statute Is Subject To Strict Scrutiny Under The First
      Amendment. ................................................................................ 8

      C.   Content-Based Recording Statutes Can Only Withstand Strict Scrutiny If
      They Are Narrowly Tailored to Serve a Compelling Government Interest..... 13

           1.    There is No Compelling Government Interest in Prohibiting Recordings
           of Speech in Public Settings, Including Those at Issue in this Case. ........... 13

           2.    Neither the Oregon Statute nor the Analogues in this Case are Narrowly
           Tailored ................................................................................ 15

      D.   Under *Project Veritas*, This Case's Analogues Also Violate Intermediate
      Scrutiny Because They Fail To Leave Open Ample Alternative Means Of
      Communication. ................................................................................ 16

      E.   California's, Florida's, and Maryland's Recording Statutes Are Also
      Overbroad. ................................................................................ 17

II.   THE DAMAGES CLAIMS HERE MUST BE REVERSED AND
      THE COURT SHOULD REMAND FOR A NEW TRIAL ON ALL
      REMAINING CLAIMS. ................................................................... 19

III.  AT THE VERY LEAST, THIS COURT SHOULD STAY
      ISSUANCE OF THE MANDATE PENDING FINAL RESOLUTION
      OF *PROJECT VERITAS*. ................................................................ 21

i

CONCLUSION ................................................................................................. 21

CERTIFICATE OF COMPLIANCE ........................................................................ 25

CERTIFICATE OF SERVICE ............................................................................... 26

# TABLE OF AUTHORITIES

*Cases*

*Abreu-Reyes v. I.N.S.*, .................................................................. 3
    350 F.3d 966 (9th Cir. 2003)

*Animal Legal Defense Fund. v. Wasden*, .................................... 6, 7, 8, 12, 14, 16
    878 F.3d 1184 (9th Cir. 2018)

*Ashcroft v. Free Speech Coal.*, .............................................. 17
    535 U.S. 234 (2002)

*Belishta v. Ashcroft*, ............................................................. 4
    378 F.3d 1078 (9th Cir. 2004)

*Brugmann v. State*, ................................................................ 8
    117 So. 3d 39 (Fla. Dist. Ct. App. 2013)

*Buckley v. Mukasey*, ............................................................ 20
    538 F.3d 306 (4th Cir. 2008)

*Burke v. Deere & Co.*, .......................................................... 20
    6 F.3d 497 (8th Cir. 1993)

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, ........................................ 12
    142 S. Ct. 1464 (2022)

*City of Pomona v. SQM N. Am. Corp.*, .............................................. 20
    801 F. App'x 488 (9th Cir. 2020)

*Dyna-Med, Inc. v. FEHC*, ..................................................... 10
    43 Cal. 3d 1379 (1987)

*Fordyce v. City of Seattle*, ................................................. 7, 10
    55 F.3d 436 (9th Cir. 1995)

*Glik v. Cunniffe*, ................................................................ 10
    655 F.3d 78 (1st Cir. 2011)

*In re Zermeno-Gomez,* ..................................................................... 4, 6
    868 F.3d 1048 (9th Cir. 2017)

*Kuba v. 1-A Agric. Ass'n,* ................................................................ 13
    387 F.3d 850 (9th Cir. 2004)

*Malpas v. State,* .................................................................................. 8
    695 A.2d 588 (Md. App. 1997)

*Massachusetts v. Oakes,* .................................................................. 18
    491 U.S. 576 (1989)

*McCullen v. Coakley,* ................................................................. 11, 12
    573 U.S. 464 (2014)

*Mills v. PPE Casino Resorts Maryland, LLC,* .................................. 8
    No. CV RDB-15-495, 2017 WL 1862474 (D. Md. May 8, 2017)

*Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles,* ....................... 4
    725 F.3d 1194 (9th Cir. 2013)

*Payton v. Abbott Labs,* .................................................................... 20
    780 F.2d 147 (1st Cir. 1985)

*Pizzuto v. Arave,* ............................................................................... 4
    386 F.3d 938 (9th Cir. 2004)

*Planned Parenthood Fed'n of Am., Inc. v. Newman,* ................. 2, 5, 20
    51 F.4th 1125 (9th Cir. 2022)

*Planned Parenthood Fed'n of Am., Inc. v. Newman,* .............. 2, 5, 6, 20
    No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022)

*Poyson v. Ryan,* ............................................................................ 5, 21
    879 F.3d 875 (9th Cir. 2018)

*Project Veritas Action Fund v. Rollins,* ......................................... 11
    982 F.3d 813 (1st Cir. 2020)

*Project Veritas v. Schmidt,* ......................................................................*passim*
    72 F.4th 1043 (9th Cir. 2023)

*Ryan v. Schad,* ............................................................................................... 3
    570 U.S. 521 (2013)

*Snyder v. Phelps,* ......................................................................................... 17
    562 U.S. 443 (2011)

*Stokley v. Ryan,* ............................................................................................ 3
    705 F.3d 401 (9th Cir. 2012)

*United States v. Foumai,* .............................................................................. 4
    910 F.2d 617 (9th Cir. 1990)

*United States v. McAdory,* ....................................................................... 4, 6
    935 F.3d 838 (9th Cir. 2019)

*United States v. Stevens,* ...................................................................... 17, 18
    559 U.S. 460 (2010)

**Statutes & Rules**

9th Cir. Gen. Ord. 4.6 ................................................................................. 1

9th Cir. Gen. Ord. 5.3 ................................................................................. 1

9th Cir. Gen. Ord. 5.3(c) ............................................................................ 1

9th Cir. R. 27-1 .......................................................................................... 1

9th Cir. R. 41-1 .......................................................................................... 1

Cal. Penal Code § 69(a) ........................................................................... 10

Cal. Penal Code § 69(b) ........................................................................... 10

Cal. Penal Code § 148(a) ......................................................................... 10

Cal. Penal Code § 148(g) ......................................................................... 10

Cal. Penal Code § 632 ................................................................. 8, 9, 10

Cal. Penal Code § 632(e) ........................................................................ 8

Cal. Penal Code § 633.5 .......................................................................... 8

Cal. Penal Code § 633.6 .......................................................................... 8

Cal. Stats 2015, ch. 177 ........................................................................ 10

Fed. R. App. P. 27 ................................................................................... 1

Fed. R. App. P. 41 ................................................................................... 1

Fed. R. App. P. 41(c), 1998 Adv. Comm. Note ...................................... 4

Fed. R. App. P. 41(d)(4), 2018 Adv. Comm. Note .................................. 3

Fla. Stat. § 934 ....................................................................................... 8

Md. Code, Cts. & Jud. Proc. § 10-402 .................................................... 8

Oregon Rev. Stat. § 165.540(5)(a)-(b) .................................................... 8

### Other Authorities

Doha Madani, *Maryland Officer suspended after video shows him getting into back seat of patrol car with woman*, NBC News (Sep. 6, 2023) .......... 11

Janelle Lamb, *He Said. She Said. The iPhone Said. The Use of Secret Recordings in Domestic Violence Litigation*, 110 Calif. L. Rev. 1095, 1136 (2022) .............................................................................. 14

Jay Stanley, *Body Cameras and the George Floyd Protests*, ACLU (June 25, 2020) ...................................................................................... 11

Michael J. Gibson, *Just Because It's Legal Doesn't Mean You Can Do It: The Legality of Employee Eavesdropping and Illinois Workplace Recording Policies*, 46 Loy. U. Chi. L.J. 913, 922 (2015) ............................. 14

Rauvin Johl, *Reassessing Wiretap and Eavesdropping Statutes: Making One-Party Consent the Default*, 12 Harv. L. & Pol'y Rev. Online 177, 177 (2018) .................................................................................. 14

SB 411 Analysis by Assembly Committee on Public Safety (June 30, 2015) ....... 10

# INTRODUCTION

On July 3, 2023, this Court issued a watershed decision in *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023), which recognized that a recording statute analogous to the statutes at issue in this case was "a content-based restriction that violates the First Amendment right to free speech and is therefore invalid on its face." *Id*. at 1050. Because the decision in *Project Veritas* is binding law of the circuit, it requires modification of this Court's decisions in this case, to protect and vindicate fundamental First Amendment rights and prevent the manifest injustice of applying plainly unconstitutional statutes against Defendants-Appellants here.

Thus, Pursuant to Fed. R. App. P. 27, 41, 9th Cir. R. 27-1, 41-1, and 9th Cir. Gen. Ord. 4.6, 5.3, Defendants-Appellants move this Court for an order: (1) staying issuance of the mandate in this appeal; and (2) setting a briefing schedule regarding how the opinion and memorandum decision must be modified in light of an intervening change in law.

In the alternative, the Defendants move for modification of the opinion and memorandum decision in light of intervening change in law. *Cf.* 9th Cir. Gen. Ord. 5.3(c). As stated below, *Project Veritas* justifies reversing the judgment finding Defendants liable on statutory recording claims and liable for compensatory damages, and justifies remanding the case for a new trial on all remaining claims.

Also in the alternative, Defendants move to stay issuance of the mandate in this appeal until the mandate issues in *Project Veritas*. Defendants note that the defendants there have petitioned for panel rehearing and rehearing en banc. Although *Project Veritas* is already law of the circuit, Defendants do not object to staying this appeal and this motion until the final resolution of *Project Veritas*.[1]

Finally, in the further alternative, Defendants move that this matter be remanded to the District Court with instructions to consider the issues raised in this motion in the first instance.

## PROCEDURAL HISTORY

On October 21, 2022, this Court issued its opinion and memorandum in which it affirmed in large part the district court's judgment against Defendants. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) ("*Planned Parenthood I*") (concerning publication damages and the Federal Wiretap Act); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022) ("*Planned Parenthood II*") (concerning

---

[1] This motion focuses primarily on the unconstitutionality of the recording statutes under which Plaintiffs sued Defendants. However, the reasoning of *Project Veritas* has broader implications for the compensatory damages here—which were awarded based on arguments that the surreptitious recordings were illegal, that the acts of recording were not protected by the First Amendment, and that the First Amendment had no application to the case as tried to the jury—and for the other claims. Thus, Defendants respectfully request a briefing schedule on the applicability of *Project Veritas* to the entirety of the appeal.

breach of contract, RICO, trespass, fraud, and California, Florida, and Maryland recording statutes). The facts of this case are laid out in those opinions and are therefore not repeated here.

On December 5, 2022, the various Defendants timely filed petitions for panel rehearing and/or petitions for rehearing en banc, which this Court denied on March 1, 2023. Between May 23-30, 2023, the various Defendants timely filed petitions for a writ of certiorari, which the Supreme Court denied on October 2, 2023. In light of the intervening change of law in *Project Veritas*, Defendants now move to stay issuance of the mandate and for modifications of the decisions.

## LEGAL STANDARD

As a general rule, "[t]he court of appeals must issue the mandate immediately on receiving a copy of a Supreme Court order denying the petition, unless extraordinary circumstances exist." Fed. R. App. 41(d)(4). "[A] circuit court has the inherent power to stay its mandate following the Supreme Court's denial of certiorari." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529 (9th Cir. 1989). As stated in Rule 41, that inherent authority can only be exercised in "extraordinary circumstances." Fed. R. App. P. 41(d)(4), 2018 Adv. Comm. Note (quoting *Ryan v. Schad*, 570 U.S. 521, 525 (2013) (per curiam)). Extraordinary circumstances include a "miscarriage of justice." *Ryan*, 570 U.S. at 525. Thus, "[t]o constitute an exceptional circumstance, an intervening change in law must require a significant

change in result for the parties." *Stokley v. Ryan*, 705 F.3d 401, 403 (9th Cir. 2012). In concept, this extraordinary circumstance is similar to that needed to recall the mandate. *See Abreu-Reyes v. I.N.S.*, 350 F.3d 966, 967 (9th Cir. 2003).

"A court of appeals' judgment or order is not final until issuance of the mandate." Fed. R. App. P. 41(c), 1998 Adv. Comm. Note. "Thus, we have explained that a 'court of appeals may modify or revoke its judgment at any time prior to issuance of the mandate, *sua sponte* or by motion of the parties.'" *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1203 (9th Cir. 2013) (quoting *United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990)). Although subject to modification until the mandate is issued, "a published decision of this court constitutes binding authority" and "law of the circuit" immediately upon its issuance. *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017).

Further,

> Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense. In other words, well-reasoned dicta is the law of the circuit, but we are not bound by a prior panel's comments made casually and without analysis, uttered in passing without due consideration of the alternatives, or done as a prelude to another legal issue that commands the panel's full attention.

*United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) (cleaned up).

Finally, the Court also has inherent authority to stay issuance of the mandate for other reasons, such as judicial economy. *See Pizzuto v. Arave*, 386 F.3d 938, 939 (9th Cir. 2004) (staying mandate pending resolution of related cases by Supreme Court); *Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004) (staying mandate pending administrative proceedings); *cf. Poyson v. Ryan*, 879 F.3d 875, 887 & n.5 (9th Cir. 2018).

## ARGUMENT

In *Planned Parenthood II*, this Court issued an unpublished memorandum decision affirming the jury's finding that Defendants violated the California, Florida, and Maryland recording statutes.[2] *See* 2022 WL 13613963. That conclusion has now been superseded by authority from this Court which, when applied to those state statutes, renders them flagrantly unconstitutional. *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023). As explained below, this requires modification of both *Planned Parenthood I* and *Planned Parenthood II*.

## I. THIS COURT'S DECISION IN *PROJECT VERITAS* RENDERS THE RECORDING STATUTES UNCONSTITUTIONAL.

On July 3, 2023, this Court invalidated Oregon's all-party consent statute as unconstitutional. *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023). In *Project Veritas,* the plaintiff nonprofit investigative journalism organization (Project

---

[2] This Court previously reversed the judgment on the federal recording claims in *Planned Parenthood I*.

Veritas), sought to enjoin Oregon officials from enforcing the state's prohibition on secret audio recordings because the plaintiff intended to engage in an undercover investigation of government corruption. *Id.* at 1052. Project Veritas proposed to investigate corruption by "recording undercover interviews … in locations open to the public, like *restaurants,* parks and sidewalks" but feared doing so because of Oregon's statutory ban on recordings. *Id.* (emphasis added).

Importantly, *Project Veritas* is a published opinion, and is therefore binding law of the circuit even though the mandate has yet to issue there. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017). In contrast, *Planned Parenthood II*—concerning the recording claims here—was an unpublished memorandum decision, with no precedential value. But even if it were published, because it did not specifically address the constitutionality of recording statutes, the law of the circuit as to constitutionality is that announced in *Project Veritas*, not *Planned Parenthood II. See United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019).

As explained below, in light of *Project Veritas*, *Planned Parenthood II* must be modified to reverse at least the judgment in favor of Plaintiffs on the recording claims, with an instruction to the district court to enter judgment in Defendants' favor.

### A.      Recordings Of Public Interest Are Protected Speech.

In *Project Veritas*, this Court extended its prior decision in *Animal Legal Defense Fund. v. Wasden*, 878 F.3d 1184, 1203-04 (9th Cir. 2018). In *Wasden,* journalists were surreptitiously recording instances of animal abuse on dairy farms. *Id.* at 1189. The Idaho legislature responded by passing a law banning these types of recordings over "concerns about farm security and privacy." *Id.* at 1192. In holding the law unconstitutional, the *Wasden* Court noted that the recording itself is "protected speech" and there is "*a First Amendment right to film matters of public interest.*" *Id.* at 1203 (citing *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (emphasis added)).

These types of recordings, which necessarily involve decisions about "content, composition" are "inherently expressive activity" protected by the First Amendment. *Id.* Therefore, "[b]ecause the recording process is itself expressive and is 'inextricably intertwined' with the resulting recording, *the creation of audiovisual recordings is speech* entitled to First Amendment protection as purely expressive activity." *Id.* at 1204 (emphasis added).

The court in *Project Veritas* similarly held that when investigative journalists record newsworthy events, "the recording itself is protected speech." *Project Veritas*, 72 F.4th at 1055. Therefore, the Oregon statute prohibiting any such recordings, without all parties' consent, is "a regulation of protected speech." *Id*.

**B.  When A Statute Permits Certain Types Of Recording Content While Banning Others, The Statute Is Subject To Strict Scrutiny Under The First Amendment.**

After determining that the Oregon law banning certain recordings indeed regulates protected speech, the *Project Veritas* Court turned to the issue of whether the law was a content-based restriction that violated the First Amendment and would therefore "be invalid on its face." *Id.* at 1050. "A law is content-based for purposes of the First Amendment if it singles out any topic or subject matter for differential treatment." *Id.* at 1056.

The Court noted that the Oregon statute (like California's) distinguished between recording felonies that endanger human lives and recording similar conduct during the commission of a misdemeanor. *Id.* at 1057 (citing Oregon Rev. Stat. § 165.540(5)(a)-(b)). It also highlighted that the Oregon statute (like California's) authorized unconsented recordings of conversations with police officers, which, as the ACLU attested in its comments supporting the creation of this legislative exception, is consistent "with the vast and developing consensus among courts and legal scholars confirming that the right to record on-duty police is constitutionally protected." *Id.* at 1051, 1052. Noting that the law "'pivots on the content of the recording'"—namely, what the recording captures—the court found the statute to be an "obvious" example of content-based regulation of speech. *Id.* (quoting *Wasden*, 878 F.3d at 1204).

8

Just as in *Project Veritas*, California's eavesdropping statute (Cal. Penal Code § 632) regulates based on content, creating a wide array of unrelated exceptions for recordings, including public utilities (*id*. at subd. (e)) and people seeking a domestic violence restraining order (*id*. at § 633.6). Directly on point here, Defendants asserted a defense under § 633.5, which provides that it is not a violation of § 632 to surreptitiously record a conversation for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of a *limited set of crimes*, including extortion, kidnapping, and any *felony involving violence against a person*, including human trafficking.

Similarly, the Maryland and Florida recording statutes (Fla. Stat. § 934; Md. Code, Cts. & Jud. Proc. § 10-402) both contain exceptions based on the content of the recording. *See Brugmann v. State*, 117 So. 3d 39, 49 (Fla. Dist. Ct. App. 2013) (identifying eight-factor test for determining reasonableness of expectation of privacy, including illegal conduct, intent, and content of communication, upon collecting cases); *Mills v. PPE Casino Resorts Maryland, LLC*, No. CV RDB-15-495, 2017 WL 1862474, at *4 (D. Md. May 8, 2017); *Malpas v. State*, 695 A.2d 588, 595 (Md. App. 1997) (identifying factors).

These specified carve-outs inherently "define regulated speech by particular subject matter," and California's "reasonably-believe" condition inherently re-

quires law enforcement and triers of fact to review the substantive content of the recording to determine "reasonableness." *Project Veritas*, 72 F.4th at 1056-57.

Moreover, the California State Legislature has clarified that recording a police officer in a public place or wherever the person recording has a right to be "does [not] constitute reasonable suspicion to detain the person or probable cause to arrest the person." Cal. Penal Code § 148(g). In other words, California law categorically prohibits detaining or arresting a person because he or she recorded a police officer without consent pursuant to § 148(g), notwithstanding the older and more general rule against unconsented recordings under § 632.[3] This is yet another content-based exception to § 632.[4]

---

[3] That this provision is more than mere surplusage is confirmed by its sister provision, Cal. Penal Code § 69(b), enacted by the same bill (Cal. Stats 2015, ch. 177 (Senate Bill 411)), which separately provides that recording an executive officer in a public place or wherever the person recording has a right to be is not a violation of § 69(a). Section 69(b) does not include the additional clause contained in § 148(g) further providing that protected recordings shall never be a basis for detaining or arresting the person recording—again, despite being enacted in the same bill. Thus, construing § 148(g) to be a mere exception to § 148(a) would improperly delete subsection (g)'s additional clause from the statute. *See Dyna-Med, Inc. v. FEHC*, 43 Cal. 3d 1379, 1387 (1987) (courts generally must "accord[] significance, if possible, to every word, phrase and sentence" of a statute, and "[a] construction making some words surplusage is to be avoided"); *see also* SB 411 Analysis by Assembly Committee on Public Safety (June 30, 2015) (stating that "[i]n general, the public enjoys a 'First Amendment right to film matters of public interest.'" (quoting *Fordyce v. City of Seattle*, 55 F.3d 436, 439(9th Cir. 1995)); also citing and quoting *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("[T]he First Amendment's aegis … encompasses a range of conduct related to the gathering and dissemination of information.… The filming of … police officers perform-

Even if there were no statutory exception for police-officer recordings, it is now clear that *the First Amendment* forbids states from applying their recording statutes to even *secret* recordings of police officers taken in the course of their official duties. *See Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 832 (1st Cir. 2020) (holding that right to record public officials engaged in public duties in a public space, for purposes of newsgathering, necessarily protects right to record surreptitiously, and noting that the recording of Rodney King's beating was not done in plain sight); *see also id.* at 833 (secret recording can be a better tool for gathering authentic information about police activities and "thereby facilitating the free discussion of governmental affairs" and "uncovering … abuses") (alteration in original, internal quotes omitted). This *constitutional bar* on applying recording

---

ing their responsibilities, fits comfortably within these principles.")), http://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0401-0450/sb_411_cfa_20150629_100444_asm_comm.html.

[4] Indeed, § 148(g) is not limited to protecting recordings of only *non-confidential* conversations with police officers, because by its very terms it broadly applies whenever a police officer is in a public place or wherever the person recording has a right to be; and not all such conversations will be reasonably believed to be non-confidential, as it is common knowledge that sometimes police officers attempt to say and do things confidentially in the course of carrying out their duties (even if in violation of police department policies). *See, e.g.*, Jay Stanley, *Body Cameras and the George Floyd Protests*, ACLU (June 25, 2020), https://www.aclu.org/news/privacy-technology/body-cameras-and-the-george-floyd-protests; Doha Madani, *Maryland Officer suspended after video shows him getting into back seat of patrol car with woman*, NBC News (Sep. 6, 2023), https://www.nbcnews.com/news/us-news/maryland-officer-suspended-video-shows-getting-back-seat-patrol-vehicl-rcna103659.

statutes to unconsented recordings of police activities at least renders them content-based *as applied* in this case. *See, e.g., McCullen v. Coakley*, 573 U.S. 464, 485 (2014) (noting that content-neutral statutes can be viewpoint- or content-based *as applied*).[5]

Just as the Oregon's content-based distinctions were "obvious" examples of content-based regulations, these distinctions in California's, Florida's, and Maryland's recording laws are also "obvious" examples of content-based regulation of speech because they "define regulated speech by particular subject matter." *Project Veritas*, 72 F.4th at 1057 (citing *Wasden,* 878 F.3d at 1230 and *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S. Ct. 1464 (2022)).

Just as the Oregon statute permitted some recordings but not others based on the content of those recordings, the recording statutes that Plaintiffs claimed Defendants violated predicates liability on the content of the videos—and thus, the speech—at issue. Because the statutes draw distinctions based upon the content of the recording, the statutes are a content-based regulation of speech. For a content-based restriction of speech to be sustained as constitutional, it must survive strict scrutiny, a test the recordings statutes cannot come close to satisfying.

---

[5] This right necessarily extends to recording even confidential conversations with police officers, because, as noted, sometimes officers attempt to act confidentially in the course of exercising their duties.

### C. Content-Based Recording Statutes Can Only Withstand Strict Scrutiny If They Are Narrowly Tailored to Serve a Compelling Government Interest.

After determining that the Oregon recording statute was content-based, the *Project Veritas* Court analyzed whether: (1) it was justified by a compelling government interest; and (2) whether it was narrowly tailored to serve that interest.

### 1. There is No Compelling Government Interest in Prohibiting Recordings of Speech in Public Settings, Including Those at Issue in this Case.

As to whether Oregon had a compelling governmental interest for its statute, the court noted that the government only has a compelling interest in safeguarding privacy when privacy is invaded in an "intolerable manner." *Project Veritas, supra,* 72 F.4th at 1059. In recreational, social, or commercial settings like parks or entertainment venues, the government's interest in protecting privacy from unwanted speech is "far less important." *Id.* at 1060 (citing *Kuba v. 1-A Agric. Ass'n,* 387 F.3d 850, 861 n.10 (9th Cir. 2004)). As the court explained:

> prohibiting a speaker's creation of unannounced recordings in public places to protect the privacy of people engaged in conversation in those places is the equivalent of prohibiting protesters' or buskers' speech in public places for the same purpose. Thus, we must analyze Oregon's interest in conversational privacy as protecting people's conversational privacy from the speech of other individuals, even in places open to the public.

*Id.* at 1060 (citing *Berger*, 569 F.3d at 1054).

Based on the above, the court held that:

> Oregon does not have a compelling interest in protecting individuals' conversational privacy from other individuals' protected speech in *places open to the public*, even if that protected speech consists of creating audio or visual recordings of other people.

*Id.* at 1060 (emphasis added).

Recording one's own conversations in a public setting can hardly be considered an "intolerable" intrusion into privacy—to hold otherwise is contrary to *Project Veritas, Wasden,* federal law, and the vast majority of states.[6] The utilization by Plaintiffs of a post-hoc, *subjective desire* for a conversation to be private in a public setting, like a restaurant or the exhibit hall of a large convention, illustrates that California's, Florida's, and Maryland's eavesdropping laws flunk the test for a compelling governmental interest even more dramatically than Oregon's statute in

---

[6] Janelle Lamb, *He Said. She Said. The iPhone Said. The Use of Secret Recordings in Domestic Violence Litigation*, 110 Calif. L. Rev. 1095, 1136 (2022) ("The majority of states have followed the federal example in enacting one party consent statutes."); Rauvin Johl, *Reassessing Wiretap and Eavesdropping Statutes: Making One-Party Consent the Default*, 12 Harv. L. & Pol'y Rev. Online 177, 177 (2018) ("Most states have eavesdropping and wiretapping statutes that impose one-party consent regimes, allowing the recording of audio if one party to the communication consents."); Michael J. Gibson, *Just Because It's Legal Doesn't Mean You Can Do It: The Legality of Employee Eavesdropping and Illinois Workplace Recording Policies*, 46 Loy. U. Chi. L.J. 913, 922 (2015) ("Notwithstanding the thirteen two-party consent jurisdictions, every other state that has an eavesdropping law requires only one party to the conversation to consent for it to be recorded.")

*Project Veritas*. As described above, there is simply no compelling interest in the government regulation of one's own newsworthy conversations in public settings.[7]

**2. Neither the Oregon Statute nor the Analogues in this Case are Narrowly Tailored.**

Lastly, *Project Veritas* also held that the statute was not narrowly tailored because the statute burdens more speech than is necessary to achieve its stated interest and there were other ways for Oregon to achieve its interests of protecting conversational policy. *Id.* at 1062. The statute clearly encompasses more than "private conversations" by virtue of prohibiting protected speech (recordings) that take place in public regarding matters of important public concern. It thus restricts far more speech than necessary to protect individual privacy, since "unannounced recordings" are essential to obtaining candid responses on issues of public concern in public places and requiring "notification would effectively *destroy* the intended content of the recording." *Id.* at 1065 (emphasis added).

In sum, the recording statutes at issue here, just like the Oregon statute, regulate audiovisual recordings that are protected speech. Because both laws are

---

[7] As *Project Veritas* observed, the candid nature of undercover investigative recordings in public places is essential to obtaining "unfiltered responses," and thus "a rule that requires the person creating the recording to provide notice [to the other person] extinguishes that speech." *Project Veritas*, 72 F.4th at 1065 (emphasis added).

content-based, insofar as they permit certain types of recordings but not others, they are subject to strict scrutiny, which they cannot withstand.

**D.     Under *Project Veritas*, This Case's Analogues Also Violate Intermediate Scrutiny Because They Fail To Leave Open Ample Alternative Means Of Communication.**

*Project Veritas* also makes clear that the recoding statutes in this case cannot survive intermediate scrutiny even assuming, *arguendo*, they were content neutral. This is because, as this Court concluded regarding the Oregon recording statute, California's, Florida's, and Maryland's statutes fail to leave open ample alternative means of communication, "because the protected speech is the recording of subjects' unfiltered responses," (citing *Wasden*, 878 F.3d at 1204), and thus "a rule that requires the person recording to provide notice *extinguishes that speech*." *Project Veritas*, 72 F.4th at 1065 (emphasis added). "In other words, creating *announced* recordings is not an adequate alternative channel of speech for creating *unannounced recordings*," since it would "effectively destroy" the ability to obtain "candid responses to issues of controversy." *Id.* at 1065 (emphasis added).

This Court also made clear that after-the-fact reporting of an (unrecorded) undercover interview is likewise not an ample alternative, because "*[a]udiovisual recording is a unique medium of communication*" that "captures in real time both the sounds and sights of an event, making it more trustworthy and persuasive—and thus having a vastly greater impact—than post-hoc written or oral accounts." *Id.* at

16

1066 (emphasis added). Moreover, such recordings are "unique because they can be readily disseminated to a wider audience … via different forms of media." *Id.* at 1066 (internal quotes omitted).

Accordingly, this Court's intermediate-scrutiny analysis in *Project Veritas* squarely applies to the recording statutes here, which unconstitutionally prohibit unconsented recordings of *candid* conversations in public places regarding issues of significant public concern, even though such "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). Thus, even if the recording statutes here were content-neutral (they are not), they still violate the First Amendment as "effectively destroy[ing]" Defendants' "special[ly] protect[ed]" speech under *Project Veritas*.

### E. California's, Florida's, and Maryland's Recording Statutes Are Also Overbroad.

For similar reasons, California's, Florida's, and Maryland's recording statutes are unconstitutionally overbroad. "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). "In the First Amendment context," a law is facially overbroad "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). This is true

17

even if this Court believes the statutes could be constitutionally applied in this case, because "[t]he First Amendment's doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989).

Here, a substantial number of the recording statutes' applications forbid protected speech under *Project Veritas*—i.e., recordings of confidential conversations in public places regarding issues of public controversy via a medium (audiovisual recordings) with a uniquely "self-authenticating character" and ability to "be disseminated to a wider audience when incorporated into news programming." *Project Veritas*, 72 F.4th at 1066. It also applies to recordings of confidential conversations in private places (such as livestock agricultural operations) intended to expose newsworthy corruption (e.g., animal abuse) to the public eye, despite this Court's express recognition of First Amendment protection for such activity. *Wasden*, 878 F.3d at 1203-05.

Thus, even assuming, *arguendo*, that the recording statutes are not unconstitutional as applied to Defendants, they still prohibit a substantial amount of protected speech relative to any plainly legitimate sweep under *Project Veritas* and are thereby facially overbroad.

18

## II. THE DAMAGES CLAIMS MUST BE REVERSED AND THE COURT SHOULD REMAND FOR A NEW TRIAL ON ALL REMAINING CLAIMS.

This is a case about surreptitiously recorded videos. From start to finish, at trial, Plaintiffs characterized Defendants as lawbreakers who illegally surreptitiously recorded Plaintiffs under both state and federal recording laws. 1-ER-124, 130. Even more, Plaintiffs were allowed to allege and argue the exact opposite of the truth: that Defendants' protected acts of surreptitious recording were illegal and a legitimate basis for liability, instead of First Amendment-protected. The District Court compounded the error by instructing the jury that the First Amendment was not a defense to the allegations or damages in this case. 16-ER-4274 ("The First Amendment is not a defense to the claims in this case for the jury to consider."). And the District Court excluded Defendants' experts supporting the credibility of their videos and the importance of their work, because, without a claim for publication damages, "whether the strategy that was taken, whether it was for—you know, for a great reason or not is not relevant." 18-ER-5142, 5135. In light of *Project Veritas*, that information is relevant and the acts of recording are clearly First Amendment-protected.

Now, it is clear that Defendants' surreptitious recordings were legal—and not merely legal but salutary exercises of the First Amendment right to Free Speech. The compensatory damages here were alleged to result, at least in signifi-

cant part, from the acts of surreptitious recording, which under *Project Veritas* must be considered acts of Free Speech protected under the First Amendment. Without the support of the acts of surreptitious recording, the damages judgment cannot stand.

Given the comprehensive taint on the whole trial of treating the acts of surreptitious recording as illegal and wrongful, instead of First Amendment-protected, this Court should modify both *Planned Parenthood I* and *Planned Parenthood II* to order a new trial on the remaining claims of RICO, breach of contract, Unfair Competition, fraud, and trespass. The errors here are like those this Court and others have found to require a new trial, because they permeated the whole case. *See City of Pomona v. SQM N. Am. Corp.*, 801 F. App'x 488, 491 (9th Cir. 2020) (ordering a new trial even on a previously decided causation issue because causation and damages are "too intertwined"); *Buckley v. Mukasey*, 538 F.3d 306, 320-21 (4th Cir. 2008) (awarding new trial because wrongful exclusion of evidence could have "permeate[d] the trial"); *Burke v. Deere & Co.*, 6 F.3d 497, 513 (8th Cir. 1993); *Payton v. Abbott Labs*, 780 F.2d 147, 154-55 (1st Cir. 1985). Because of the taint of illegality from applying unconstitutional (or inapplicable) recording laws, combined with treating First Amendment-protected speech acts as unlawful and predicates for compensatory damages, compromised Defendants' ability to present

a robust defense to all claims, this Court should grant a new trial on the remaining claims.

## III. AT THE VERY LEAST, THIS COURT SHOULD STAY ISSUANCE OF THE MANDATE PENDING FINAL RESOLUTION OF *PROJECT VERITAS*.

As stated above, separate from a stay of the mandate due to a change in law, this Court has inherent authority to stay issuance of the mandate for reasons of judicial economy. In that context, Defendants need not establish that a change in law would have a significant change in result of the case. *See Poyson v. Ryan*, 879 F.3d 875, 887 & n.5 (9th Cir. 2018). Of course, as stated above, *Project Veritas* does indeed dictate a significant change in result, and the Court should order further briefing on the ramifications of the decision.

In any event, this Court should at least stay issuance of the mandate pending the final resolution of *Project Veritas*. That way if a petition for rehearing en banc or a petition for a writ of certiorari modifies it, the modified opinion can then be applied to this case.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and stay the issuance of the mandate pending the final resolution of *Project Veritas*, set a briefing schedule on the effect of *Project Veritas* on this case, *sua sponte* modify its de-

cisions in light of *Project Veritas*, or remand this matter to the District Court to consider the issues herein in the first instance.

Dated: October 5, 2023   Respectfully submitted,

*/s/ Peter Breen*
Thomas Brejcha
Peter Breen
Matthew F. Heffron
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

*Attorneys for Appellant David Daleiden in Appeal No. 20-16070*

*/s/ Charles S. LiMandri*
*/s/ Jeffrey M. Trissell*
Charles S. LiMandri (CA Bar No. 110841)
Paul M. Jonna (CA Bar No. 265389)
Jeffrey M. Trissell (CA Bar No. 292480)
LIMANDRI & JONNA, LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Tel: (858) 759-9930; Fax: (858) 759-9938
cslimandri@limandri.com

*Attorneys for Appellants the Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden, and Gerardo Adrian Lopez in Appeal No. 20-16070*

*/s/ Harmeet K. Dhillon* (CA Bar No. 207873)
*/s/ Mark P. Meuser* (CA Bar No. 231335)
DHILLON LAW GROUP INC.

177 Post Street, Suite 700
San Francisco, CA 94108
Tel. 415-433-1700; Fax. 415-520-6593
harmeet@dhillonlaw.com

*Attorneys for Appellants the Center for Medical*
*Progress, BioMax Procurement Services, LLC,*
*and David Daleiden in Appeal No. 20-16070*

*/s/ Christina Compagnone*
Christina Compagnone
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Tel: (202) 641-9168
ccompagnone@aclj.org

Vladimir F. Kozina; SBN 95422
MAYALL HURLEY, P.C.
2453 Grand Canal Blvd.
Stockton, CA 95207
Tel: (209) 477-3833; Fax: (209) 473-4818
vkozina@mayallaw.com

*Attorneys for Appellant Troy Newman in*
*Appeal No. 20-16068*

*/s/ Catherine W. Short*
Catherine W. Short (CA Bar No. 117442)
LIFE LEGAL DEFENSE FOUNDATION
Post Office Box 1313
Ojai, CA 93024-1313
Tel: (707) 337-6880
kshort@lldf.org

Michael Millen (CA Bar No. 151731)
ATTORNEY AT LAW
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Tel: (408) 871-2777
mikemillen@aol.com

*Attorneys for Appellant Albin Rhomberg in Appeal No. 20-16773*

*/s/ Horatio G. Mihet*
Horatio G. Mihet
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
hmihet@lc.org

Nicolaie Cocis CA Bar # 204703
Law Office of Nic Cocis and Associates
38975 Sky Canyon Dr., Suite 211
Murrieta, CA 92563
(951) 695-1400

*Attorneys for Appellant Sandra Susan Merritt in Appeal No. 20-16820*

## CERTIFICATE OF COMPLIANCE

The text of this motion is in compliance with Federal Rules of Appellate Procedure 27(d)(2) and 32, and 9th Circuit Rule 32-3(2), which limit motions to 5,600 words or less. The text of this motion consists of 5,033 words excluding items listed in Rule 32(f), as counted by the word processing program (Microsoft Word) used to generate the brief.

*/s/ Peter Breen*
Thomas Brejcha
Peter Breen
Matthew F. Heffron
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

*Attorneys for Appellant David Daleiden in Appeal No. 20-16070*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2023, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Peter Breen*
Thomas Brejcha
Peter Breen
Matthew F. Heffron
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org

*Attorneys for Appellant David Daleiden in Appeal No. 20-16070*